IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMMA CEHOVIC DIXNEUF )
)
      **Plaintiff,** )
)
  v. ) No. 15 C 8785
)
LISA WONG, et al. )
)
      **Defendants.** )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Emma Cehovic Dixneuf's (Dixneuf) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Dixneuf alleges that Defendant Reliastar Life Insurance Company (Reliastar) allegedly provided life insurance policies (Policies) to her brother Georges A. Cehovic (Cehovic) through his employment with Northwestern Memorial Healthcare (NMH). In February 2015, Cehovic passed away. Dixneuf contends that Cehovic designated her as the sole beneficiary under the Policies and that Reliastar has refused to honor her claim under the Policies. Dixneuf brought the instant action and

1

seeks a declaratory judgment stating that Reliastar should pay Dixneuf's claim. Reliastar answered the complaint and included a counterclaim for interpleader brought against Dixneuf, and Lisa Wong (Wong), individually, and in her capacity as the Appointed Independent Administrator of the Estate of Cehovic, and in her capacity as the Guardian of the Estate of the minor child G.C. (Minor). Wong is Cehovic's former spouse and the mother of Cehovic's minor child and seeks to recover Cehovic's death benefits. Dixneuf contends that her brother specified in writing his intent that Dixneuf should receive his death benefits. Dixneuf and Wong also have filed cross-claims against each other. On March 26, 2016, the court granted Reliastar's motion to deposit funds and entered an order for final judgment in interpleader. Dixneuf now moves for summary judgment on all remaining claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000)

## DISCUSSION

It is undisputed that through his employment at NMH Cehovic was provided by Reliastar with a basic life insurance policy (Basic Policy) and a supplemental life insurance policy (Supplemental Policy). (Resp. SJ 6). It is further undisputed that Cehovic designated Dixneuf as the sole beneficiary in both the Basic Policy and the Supplemental Policy. (Resp. SJ 6). Wong concedes that Dixneuf is entitled to the $263,000 death benefit under the Basic Policy. (Resp. SJ 6). Wong argues, however, that she is entitled to the $788,000 death benefit under the Supplemental Policy. Wong contends that she was not aware of the Supplemental Policy at the time of her divorce with Cehovic and that if she had known, she would have insisted that the Minor be named as a beneficiary for the Supplemental Policy. Wong claims that she has a constructive trust of the death benefits from the Supplemental Policy. Wong further states that she is currently seeking in state court (State Court Proceedings) to have the Judgment of Dissolution of Marriage vacated so that she can assert her interest in the Supplemental Policy. Wong has already sought to stay this case pending the resolution of the State Court Proceedings and this court denied

the request, stating that it has jurisdiction to proceed forward on the federal claims before it.

I. ERISA Plan

Dixneuf contends that the Supplemental Policy is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). In the instant action, the undisputed facts show that the Supplemental Policy is part of a group life insurance plan (Group Plan), established by NMH to provide life insurance benefits to its employees and their beneficiaries. (RSF Par. 8-11, 16-18); (DE 41-1); (DE 43-3).

Wong contends that the Supplemental Policy might fall under the ERISA Safe Harbor provisions. The ERISA safe harbor provisions provide the following:

> (j) Certain group or group-type insurance programs. For purposes of title I of the Act and this chapter, the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which (1) No contributions are made by an employer or employee organization; (2) Participation the program is completely voluntary for

4

> employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R.§ 2510.3-1(j). Wong contends that employees at NMH paid the entire premiums for the Supplement Policy and that the policy may fall within the safe harbor provisions. Contrary to Wong's conclusory speculation as to the applicability of the ERISA safe harbor provisions, the totality of the facts show that the Supplemental Policy falls within the coverage of ERISA and does not fall within the ERISA safe harbor provisions. It is clear that both the Basic Policy and Supplemental Policy are part of that same Group Plan. (RSF Par. 8); (DE 41-3). Wong has not pointed to any evidence indicating that either policy was not a part of the Group Plan. The undisputed facts show that Reliastar acknowledges that the Group Plan is governed by ERISA, and that NMH employees were provided with a notice of their ERISA rights when joining the Group Plan. Dixneuf has pointed to evidence showing that NMH controls the terms and conditions of the Group Plan and administers the Group Plan, and Wong has not pointed to evidence indicating otherwise. (DE 41-3: 30); *see also Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537 (7th Cir. 2000)(stating that the Court "has held that [a]n employer who creates by contract with an insurance company a group insurance plan and designates

which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation")(internal quotations omitted)(quoting *Brundage-Peterson v. Compcare Health Serv. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989)). Thus, the Supplemental Policy is governed by ERISA.

II.  Beneficiary Under ERISA

Dixneuf argues that in accordance with ERISA she is entitled to the death benefits for the Supplemental Policy as the designated beneficiary. Pursuant to ERISA and the terms of the Supplemental Policy the designated beneficiary is entitled to receive the death benefits for that policy and Dixneuf was the sole designated beneficiary. 29 U.S.C. § 1002(1); (8); (DE 41-5). The claims in this case are governed by ERISA and this court is not restricted from enforcing the terms of the Supplemental Policy under ERISA by any ongoing state court proceedings. *See Melton v. Melton*, 324 F.3d 941, 944 (7th Cir. 2003)(stating that "ERISA preempts all state laws insofar as they may now or hereafter relate to any employee benefit plan which is subject to ERISA" and that "ERISA preempt[ed] Illinois state law with respect to determining the rightful beneficiary of [the] ERISA-regulated group term life insurance policy"); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 564 (7th Cir. 2002)(stating that "[g]enerally, ERISA preempts all state laws insofar as they may now or hereafter relate to any employee benefit plan which is subject to ERISA"). In accordance with Cehovic's intent that Dixneuf should be the sole beneficiary of his life insurance policies, Dixneuf is entitled to prevail in this action. Therefore, Dixneuf's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, Dixneuf's motion for summary judgment is granted on all claims.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 16, 2016